```
               UNITED STATES BANKRUPTCY COURT
             FOR THE NORTHERN DISTRICT OF IOWA
                       WESTERN DIVISION
```

IN RE:

STANLEY RAY COX                                   Chapter 13

    Debtor.                              Bankruptcy No. 04-04596S


<u>DECISION RE: PLAN CONFIRMATION</u>

Debtor Stanley Cox seeks confirmation of his First Amended Chapter 13 Plan (docket no. 21). Carol F. Dunbar, the standing trustee, objects. Hearing was held March 8, 2005 in Sioux City. Donald H. Molstad appeared as attorney for Cox. Dunbar appeared on her own behalf as trustee. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

Cox filed his chapter 13 petition on November 24, 2004. He is approximately 41 years old and is employed as a maintenance worker with BPI in Dakota City, Nebraska. He is married and has two children, ages 5 and 2. His spouse, Virginia, did not file a bankruptcy petition.

Cox's bankruptcy schedules, as amended, show priority tax claims in the amount of $1,289.00, a secured claim against the car owned by him and his spouse, and a secured claim against the couple's home. Also the amended schedules show unsecured claims in the aggregate amount of $35,394.67. It appears that Virginia Cox is a co-debtor on at least two-thirds of the

unsecured debts listed in the schedules.

Sometime before bankruptcy, Cox wanted to purchase a car but was having difficulty obtaining financing. Joy Hansen, Virginia Cox's 25-year old daughter from a previous marriage, offered to cosign a note to enable Cox to purchase a vehicle. Virginia Cox did not know of this offer. Cox purchased a vehicle, and Hansen cosigned the note. When Cox defaulted in paying the note, the lender obtained possession of the vehicle and sold it. There was a $6,000.00 deficiency balance after the sale. The lender demanded payment from Joy Hansen. Cox testified that both Hansen and her husband serve in military intelligence and have high level security clearances. Cox said that because of their employment, it was essential to them to pay off the note. Hansen and her husband borrowed the money from a different lender and paid the balance in full. Their repayment of the new debt, the present balance of which was not provided to the court, requires monthly installments of $250.00.

Cox testified that Hansen and her husband were upset over having to pay the note. Cox testified that Joy Hansen told her mother that unless her mother paid the debt, she would never again be permitted to see Joy or Joy's children. Cox testified that Virginia assumed the debt, and he believes that

he was released from any liability to Joy. He provided no evidence of this, and it seems unlikely that Joy Hansen would have had any motive to release him from liability for indemnification. Nonetheless, he did not list Hansen as a creditor.

Because of Joy Hansen's threat to prevent Virginia from seeing Joy and Joy's children, Virginia did not want to file bankruptcy. She wants to pay Hansens' debt in full to preserve her family relationships.

Stanley Cox's take-home pay is $2,681.42 per month (amended schedules, docket no. 23). He contributes $40.86 per month to a 401(k) plan. Cox's attorney said the deduction for the contribution was shown on Schedule I by mistake, and that the contribution was no longer being made. I estimate, with a rough deduction for increased withholding taxes, that correcting the error on Schedule I results in an increase of Cox's disposable income to $2,712.07.

Virginia Cox works part time for a McDonald's fast food restaurant. Her take-home pay is $461.65. The couple's total take-home pay is $3,173.72. Cox contributes 85 per cent of the total take-home pay; Virginia Cox contributes 15 per cent of the total take-home pay.

On his amended Schedule J, Cox shows $2,905.12 in monthly

living expenses.  This figure includes the $250.00 per month that Virginia pays to Joy Hansen.  I find and conclude that that payment is not a living expense, or in the language of 11 U.S.C. § 1325(b)(2)(A), it is not an amount "reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor...."  Deducting $250.00 per month from the scheduled monthly expenditures leaves $2,655.12 in total monthly expenses.

In his Amended Plan, Cox proposes to pay $151.30 for two months (these payments have been made) and $237.95 for 34 months.  Cox would agree that the latter figure would be increased by the net effect of his having discontinued his 401(k) plan contribution.  I have estimated the increase as $30.00, approximately 75 per cent of the monthly 401(k) contribution of $40.86.  The monthly payment to the trustee for the 34 months would be $267.95.  The total projected disposable income for the three years would be $9,412.90.  The plan provides for the payment of the trustee's statutory fee, compensation for Cox's attorney in the amount of $1,444.00, and payment of the priority claim of the Iowa Department of Revenue and Finance.  The plan shows the state's tax priority tax claim as $1,289.40.  The state filed priority claims in the total amount of $915.51.  Cox proposes to pay two secured

creditors directly.  One of the payments is to Budget Acceptance Corp. on the stripped down loan on Cox's car.  The payment is shown in Schedule J as part of Cox's budget.  The second payment is to Scott and Lisa Johnson who hold a claim secured by Cox's home.  That also is shown on the budget.  Cox's amended plan states that he is delinquent on the loan payments to Johnsons, but that he will cure the delinquency by paying the cure amount directly to Johnsons out of his 2004 income tax refund.  The regular monthly payments would also be paid directly to Johnsons.  The amended plan does not indicate the amount of the delinquency to Johnsons.  Cox's schedules show that he has, at the time of filing, accrued and garnished wages and income tax refunds in the amount of $1,000.00.  I calculate that $6,197.67 would be available to be paid to creditors holding allowed unsecured claims.  As of March 18, 2005, the claims filing deadline, unsecured claims in the total amount of $5,751.55 had been filed.

The trustee objects to confirmation of the amended plan.  She objects that Joy Hansen is being paid in full on her unsecured claim, while the amended plan does not propose to pay in full the unsecured claims against Stanley Cox.  The court understands that the amended plan is being presented by Cox on the theories that only his spouse owes the debt to

Hansen, that his spouse earns sufficient money at her part-time job to pay the monthly payment on her own, and that his spouse has good reason to pay the debt--the preservation of her contacts with her daughter and grandchildren.

Because the trustee has objected to the amended plan, it may not be confirmed unless unsecured claims are paid in full or the plan provides that all of the debtor's disposable income to be received in the three-year period of the plan is applied to make payments under the plan.  11 U.S.C. § 1325(b)(1)(A) and (B).  "'Disposable income' means income which is received by the debtor and which is not reasonably necessary to be expended--for the maintenance or support of the debtor or a dependent of the debtor...."  11 U.S.C. § 1325(b)(2)(A).

In order to determine accurately the debtor's disposable income, all of the non-debtor spouse's income and expenses must be disclosed and included in the calculation.  In re Bottelberghe, 253 B.R. 256, 263 (Bankr. D. Minn. 2000).  It has been contended also that "when spouses are both employed, but only one is a debtor in bankruptcy, it may be assumed for purposes of the disposable income computation that each contributes to family living expenses in the same proportion that his or her income bears to the total family income."  In

6

re Mathenia, 220 B.R. 427, 431 (Bankr. W.D. Okla. 1998).

If I adopt the latter assumption, I would allocate Mrs. Cox's take-home pay to the payment of 15 per cent of the family's living expenses. Her take-home pay is 15 per cent of the couple's total take-home pay. The expenses on amended Schedule J are $2,905.12. But I would subtract the payment to Hansen as not being an expense necessary to support. The couple's living expenses would be $2,655.12, and Mrs. Cox's share, at 15 per cent, would be $398.27. Her disposable income would be $63.38 ($461.65 take-home pay less $398.27), an amount not sufficient to pay Hansen $250.00 per month. That payment could be made only if subsidized by Stanley Cox at the expense of his unsecured creditors.

In many cases, this conclusion might prevent confirmation. I do not need to decide if it prevents confirmation in this case. If I were to confirm this amended plan, with the $250.00 payment to Hansen as part of the monthly budget, there would appear to be sufficient disposable income to pay all allowed claims in full.

It is unclear how many months remain on Mrs. Cox's agreement to pay Hansen $250.00 per month. I will assume it is more than the term of the amended plan. And I will assume the payment to Hansen may be made as part of the monthly

expenses and not through the trustee, which I would permit. Under the amended plan, Cox proposes to pay to the trustee $9,412.90 over three years. Subtracted from that amount would be the trustee's fee of $855.72, debtor's attorney's fees of $1,444.00, and the priority claim of the Iowa Department of Revenue and Finance in the amount of $915.51. This leaves $6,197.67 to be distributed to holders of allowed unsecured claims. Such claims have been filed in the aggregate amount of $5,751.55. Because it appears that all allowed claims would be paid in full, there is no need to deny confirmation on the ground that the amended plan inappropriately permits payment in full to Hansen. This is especially so in that it does not appear that Hansen is being paid any sooner than the unsecured creditors who have filed claims against Stanley Cox.

    I believe there is an uncertainty that detracts from my conclusion. Cox asserts in his amended plan that he and his spouse are delinquent in their payments to Johnsons on the home mortgage debt. The amended plan says the default will be cured with payments from accrued wages, garnished wages, and the 2004 tax refund. The evidence failed to show either the amount of the arrears on the mortgage or the amounts of the three sources of payment. Absent evidence on the arrears and sources of payment, the court is unable to determine that the

amended plan is feasible or whether it will require payments from monthly disposable income which would adversely affect the "full payment" distribution to creditors holding unsecured claims. Therefore, I will not confirm the plan as proposed. Debtor may modify the plan, but if he does so, he must disclose the delinquency owed to Johnsons, and the amounts of accrued wages, garnished wages, and tax refunds, from which they propose to cure the arrearage. Any surplus from these sources would be turned over to the trustee. Also, I would point out, if garnished funds are returned to the trustee, the resulting claim, if any, of the garnishing creditor must be examined to determine the effect on the percentage payment to unsecured creditors.

IT IS ORDERED that confirmation of the amended plan filed January 28, 2005 is denied.

DATED & ENTERED:

/s/ W.L. Edmonds

William L. Edmonds, Bankruptcy Judge